## HURON WATERWORKS CO. v. CITY OF HURON.

1.  The waterworks of a city, constructed under a power conferred upon the city by its charter "to construct and maintain waterworks" for protection against fires and for furnishing the inhabitants thereof with a supply of pure water for domestic purposes, and constructed and maintained at the expense of the inhabitants of such city, are held as the property of the municipal corporation, for public use, and charged with a public trust, of which the inhabitants of such city are the beneficiaries.

2... The power to construct a waterworks system for a city is not a necessary incident of its incorporation, but must, like all its other powers, be derived directly from the legislature of the state; and the power "to construct and maintain" such a system implies a duty of the municipality, through its corporate authorities, to maintain and preserve possession for the benefit of the public.

3. When a municipality is vested by its charter with power to construct and maintain a system of waterworks at the public expense and for the public use, and accepts such charter, and proceeds to exercise this authority in the manner designated, by the construction and maintenance of such waterworks at the expense of the citizens of the municipality, the waterworks so constructed and maintained are clothed with a public trust and are devoted to a public use.

4. The waterworks of a city, constructed and maintained by the municipality at the expense of its citizens and for the public use, being held by such municipality charged with a public trust, such trust, and the duty of the municipality under it, cannot be discharged and devolved upon another, by a sale by the city's common council, without legislative authority, of such waterworks, and the right and duty of the city to maintain and use them in execution of such public trust.

5. Power was conferred upon the city of Huron, by its charter, "to construct and maintain waterworks." Said city accepted the charter, and proceeded to erect, at the expense of about $46,000 to the citizens of said city, waterworks for preventing fires and furnishing the inhabitants of said city with a supply of pure water. These works were kept and maintained for several years, when the city council of said city, without legislative authority, assumed to sell and dispose of the entire plant and franchise. *Held*, that the waterworks of said city were held for public use and charged with a public trust, and that such attempted sale was void.

6. Upon such attempted sale by the city council, the purchasers paid into the city treasury the sum of $45,000 as the purchase price of said water works, but it was not found that said purchase money was appropriated by the common council to any lawful purpose of the corporation, or was in any manner used by the corporation. *Held*, that the payment of the consideration into the city treasury was unauthorized, and that its receipt by the city treasurer did not estop the city from recovering possession of its waterworks system without repayment of the sum so paid into the city treasury.

(Syllabus by the Court.   Opinion filed April. 20, 1895.)

Appeal from circuit court, Beadle county. Hon. A. W. CAMPBELL, Judge.

Two actions, one by the Huron Waterworks Company against the city of Huron, and one by H. Ray Myers and Henry Schaller, on behalf of themselves and all other taxpayers similarly situated, against the city of Huron and the Huron Waterworks Company. The actions were consolidated, and from the judgment rendered the city of Huron, H. Ray Myers, and Henry Schaller appeal. Reversed.

The facts are stated in the opinion.

*A. W. Wilmarth* and *H. Ray Myers*, for appellants.

Issuance of bonds by municipalities in aid of private industrial enterprises is unlawful. 15 Am. & Eng. Ency. Law, 1240; Loan v. Topeka, 20 Wall. 655; Opinion of Judges, 58 Me. 590; Allen v. Jay, 60 Me. 124; Commercial v. Iola, 2 Dill. 353; 2 Morawetz Priv. Corp. 1114. The business of aqueduct and waterworks companies for the supply of cities and their inhabitants with water is a public use. Reddal v. Bryan, 14 Md. 444; Burden v. Stein, 27 Ala. 104; Lumbard v. Stearns, 4 Cush. 60; New York v. Bailey, 2 Denio 433. The sewerage of a city is a public use. Hildred v. Lowell, 11 Gray 345; Re Cent. Park Comrs. 63 Barb. 282; Fellows v. Walker, 39 Fed. 651; City v. Brayden, 14 L. R. A. 268; Chicago v. People, 11 West 63. A business which requires the use of the streets of a city requires the use of property which belongs to the public. Western v. American, 65 Ga. 160; Mayor v. Moran, 7 N. W. 181. The manufacture of gas and its distribution to public and private use is a franchise belonging to the government, and a business of a public nature. New Orleans v. Louisiana, 6 Sup. Ct. 252; Louisville v. Citizens, 115 U. S. 650; People v. Chicago, 8 L. R. A. 497. The power of eminent domain can only be exercised for public purposes. 6 Am. & Eng. Ency. Law, 566; Talbot v. Hudson, 82 Mass. 417; Land v. Brown, 3 L. R. A. 472; Ross v. Davis, 97 Ind. 79; O'Reilly v. Dranning, 32 Ind. 169; Ritchie v. Bar, 75 Me. 91; DeCamp v. Hileernia, 47 N. J. L. 43; Matter of Bloomfield, 63 Barb. 437; Chesborough v. Commissioners, 37 O. St. 50; State v. City, 11 L. R. A. 738.

The words "public use" mean public utility, or what is of public benefit. Olmstead v. Comp., 33 Conn. 532; Cooley Tax, 139;.

Seeley v. Sebastian, 4 Or. 25; Lewis Em. Dom., 165; Taylor v. Thompson, 42 Ill. 9; Broadhead v. Milwaukee, 19 Wis. 625; Gilmer v. Lime, 18 Cal. 251; Stockton v. Stockton, 41 Cal. 172; Booth v. Woodbury, 35 Conn, 118; West Chicago v. McMullen, 10 L. R. A. 215.

A municipal corporation cannot sell or in any manner transfer the property necessary to perform its duties, imposed by its charter to the public, without special legislative authority, and this principle applies to public, quasi-public and private corporations which undertake to perform public duties. 2 Morawetz Priv. Corp. sec. 1320; Thomas v. West Jersey, 101 U. S. 71; Central v. Pullman, 139 U. S. 24; Pennsylvania v. St. Louis, 118 U. S. 290; Oregon v. Oregonian, 130 U. S. 1; St. Louis v. Terre Haute, 145 U. S. 393; Munn v. Illinois, 94 U. S. 130; York v. Winans, 58 U. S. 17; Pickard v. Pullman, 117 U. S. 34; Gue v. Tide, 24 How. 257; Davis v. Old Colony, 131 Mass. 271; Middlesex v. Boston, 115 Id. 347; Abbott v. Johnson, 80 N. Y. 29; Balsly v. St. Louis, 19 Ill. 68; State v. Railroad, 29 Conn. 538; Peoria v. Cool, 68 Ill. 489; Roper v. McQuarter, 77 Va. 214; Canton v. Bank, 10 Bush. 529; Louisville v. Hamilton, 81 Ky. 517; Ohio v. Dunbar, 20 Ill. 623; Heart v. Burnett. 15 Cal. 590; Black v. Delaware, 22 N. J. 130; New Orleans v. Morris, 105 U. S. 600; City v. Itcell, 80 Cal. 57; Taggart v. City, 38 N. W. 715. City v. People, 48 Ill., 239; Lord v. City, 47 Wis. 386; Roberts v. City, 17 S. W. 216. In grants to cities by charter, enumerated powers exclude all others not fairly incidental. Farmers v. School, 6 Dak. 259; Goodnow v. Corris, 11 Minn. 21; Cooley Con. Lim. 236.

A corporation, granted by charter, a franchise intended in large measures to be exercised for the public good, cannot transfer such franchise and relieve the grantees of the burden which it imposes, without legislative authority. Black v. Canal, 7 C. E. Green, 130; Mullarky v. Cedar Falls, 19 Ia. 21; Alton v. Illinois, 12 Ill. 59; Hart v. Burnett, 15 Cal. 590.

The general powers, usually granted in a city charter, are not sufficient for a city to confer a franchise for owning and operat-

ing waterworks.    National v. Oconto, 52 F. 29; Webb v. City, 13
So. 289; 2 Morawetz Priv. Corp. 1123; Fiedman, Mun. Corp. 255.
Municipal corporations are agents of the state and possess: 1st.
Those powers granted in express words.    2nd. Those necessarily
implied or incident to the powers expressly granted.    3rd. Those
absolutely essential to the declared objects and purposes of the
corporation and any fair doubt as to the existence of a power is
resolved by the court against its existence.    Treadway v.
Schuauber, 1 Dak. 236; Evans v. Hughes, 52 N. W. 1062;
3 S. D. 244 and 580; Minturn v. Lason, 23 How. 435; Barrett v.
Dennison, 155 U. S. 145; Thompson v. Lee, 3 Wall. 320; Thomas
v. Richmond, 12 Wall. 349; Clark v. DesMoines, 19 Ia. 199; Clark
v. Davenport, 14 Ia. 495; LaFayette v. Cox, 5 Ind. 38; Wallace v.
Mayor, 29 Cal. 186; Davenport v. Klemschmidt, 13 Pac. 249;
Long v. City, 51 N. W. 913; 1 Dillon M. Corp. 89.    Municipal
bodies can adopt no irrepealable legislation.    Cooley Cons. Law
251; Richmond v. Middleton, 59 N. Y. 228.    The reservation, in
a state constitution, general law, or a city charter, of a power to
amend, alter or repeal, is valid and not unconstitutional.    Mc-
Laren v. Pennington, 1 Paige. 102; Crease v. Babcock, 40 Mass.
334; English v. Company, 32 Conn. 243; Com. v. Fayette, 55
Pa. 452; Miller v. New York, 82 U. S. 19; Holyoke v. Lyman,
82 U. S.; Railroad v. Casey, 26 Pa. 287.    The legislature
is prohibited from granting to an individual association or
corporation any special or exclusive privilege, immunity
or franchise whatever.    15 Am. & Eng. Ency. Law 1055; Grand
Rapids v. Grand Rapids, 33 Fed. 669; City v. Brenham, 4 S. W.
143; Saginaw v. City, 28 Fed. 529; Jackson v. Interstate, 24 Fed.
306; New Orleans v. Crescent, 12 Fed. 308; Meadville v. Fuel, 4
Atl. 733; Chicago v. Rumpff, 45 Ill. 90; Logan v. Payne, 43 Ia.
524; Gale v. Kalamazoo, 23 Mich. 344.

*John L. Pyle*, for respondent.

A municipal corporation may hold property as of a private
nature, and over it the legislature has no control.    Small v. Dan-
ville, 51 Me. 362; Philadelphia v. Fox, 65 Pa. St. 180; Western v.

Cleveland, 126, 375; San Francisco v. Id. 9 Cal. 453; Oliver v. Worcester, 102 Mass. 489; Webb v. Mayor, 64 How. Pr. 10; Dillon, Mun. Cor. Sec. 701.   Gas works built by a municipal corporation for the purpose of supplying the city with gas, is property of a private nature.   Western v. Philadelphis, 31 Pa. St. 175.   While municipal corporations are subject at all times to the control of the legislature, yet a contract with a public corporation for the purposes of private advantage which cannot be substantially impaired.   Richland v. Lawrence, 12 Ill. 1; Tuchord v. Id. 5 Cal. 306; People v. Hurlburt, 24 Mich. 44; Territt v. Taylor. 9 Cranch 43.   The legislature cannot transfer to a new civil department the property of an existing municipality without compensation or its consent.   People v. Hunler, 26 Hun. 622; Grant v. City, 69 Pa. St. 420; Carr v. North, 35 Pa. St. 324. A municipality is not liable for damages resulting from a lawful exercise of a discretionary power to plan and construct sewers and other improvements.   Mills v. City, 32 N. Y. 489; Smith v. Mayor, 66 N. Y. 295.   A municipal corporation may mortgage its property for a debt lawfully due from it.   Varansdall v. State, 65 Ind. 176; Sturgeon v. Davies, 65 Id. 202: Branham v. San Jose, 24 Cal. 585; Adams v. Memphis, 2 Caldw. 645; Adams v. Rome, 59 Ga. 765.   Where the consideration received by a corporation under an *ultra vires* contract can be restored, equity will not relieve it from a performance of the contract without a restoration of the consideration.   15 Am. and Eng. Ency. Law. 1084; Turner v. Cruson, 30 N. W. 483; Pratt v. Short, 53 How. Pr. 506; Leonard v. Canton, 35 Miss. 139; Argente v. San Francisco, 16 Cal. 282; Moor v. New York, 73 N. Y. 238; Lucas v. Hunt, 5 O. St. 488; Montgomery v. Id. 79 Ala. 233; Hackensack v. Hoboken, 51 N. J. L. 220.

Where a city has the power under its charter to provide itself with a supply of water, the court cannot circumscribe such grant, by prescribing a manner in which the power is to be carried out.   15 Am. & Eng. Ency Law, 1116; Memphis v. Id. 5 Heiskell, 528; Warren v. Chicago, 118 Ill. 329; Shurlock v. Village, 59 Ill.

A corporation is liable for negligence and malicious torts, and in such cases it is estopped from setting up the plea of *ultra vires.* National v. Graham, 100 U. S. 699; Railway v. McCarthy, 96 U. S. 258; 1 Storey Cont. 610; White v. Franklin, 22 Pick. 181; Taylor v. Wells, 5. Mass. 10; Supervisors v. Patterson, 56 Ill. 111. Over the rights of the shareholders in a corporation,—part public and part private,—the state has the same power and no greater than over other private property. Bissell v. Railroad, 22 N. Y. 258; Chicago v. Att'y. Gen. 9 West Jurist, 347; People v. Railroad, 28 Hun. 547; Rogers v. Erie, 20 N. J. L. 409; Roper v. McWhorler, 77 Va. 212; Alcott v. Supervisors, 16 Wallace 678; Hasbrauck v. Milwaukee, 13 Wis. 37. The doctrine of *ultra vires* when invoked for or against a corporation should not be allowed to prevail when it would defeat the ends of justice or work a legal wrong. Union v. Murphy, 22 Cal. 620; Morris v. Railroad, 29 N. J. Eq. 542; Whitney v. Barlow, 63 N. Y. 62; Thomas v. Richland, 12 Wall. 349; Springs v. Knowlton, 103 U. S. 49; Storey Eq. Jur. 298. Whether a corporation in purchasing property, exceeds its power, is a question between it and the state and does not concern the vendor or others. Correl v. Springs. 100 U. S. 60; Gilbert v. Hole, 2 S. D. 164; Bank v. Mathews, 98 U. S. 628; Mining v. Clerking, 14 Cal. 552; Hayword v. Davison, 41 Ind. 214; Barnes v. Suddard, 117 Ill. 237; Groundy v. North, 7 Pa. St. 233; DeCamp v. Dobbins, 29 N. J. Eq. 36; Hickory v. Buffalo, 32 Fed. 22.

CORSON, P. J. These two actions were consolidated and tried together in the court below, as they involved substantially the same question. Judgments were rendered in both actions in favor of the Huron Waterworks Company, and from the judgments the city of Huron and H. Ray Myers and Henry Schaller have appealed to this court.

A few paragraphs from the complaint of H. Ray Myers and Henry Schaller and three findings of fact by the court will sufficiently present the case for the purposes of this decision.

It is alleged in the complaint: "(3) That heretofore, and during the years 1883 and 1884, under and by virture of the power conferred by said charter of the city of Huron, the city of Huron did construct, and cause to be constructed, a system of waterworks, consisting of engine, boiler, pumps, watermains, pipes, hydrants, sewers, and all other appurtenances necessary to a complete system of waterworks, at a great expense, to wit, as informed and believed by the plaintiffs, to be the sum of forty thousand dollars; and to pay for said waterworks and sewer, said city council issued the bonds of the city of Huron, for said forty thousand dollars, payable fifteen years after date, bearing interest at the rate of seven per cent per annum, having first been directed to issue said bonds by vote of the people, at an election duly called and held for that purpose, as provided by said charter. (4) That heretofore, and during the year 1886, the said city of Huron caused to be bored and constructed a large six-inch artesian well, as a part of an addition to the aforesaid system of waterworks, and, as informed and believed, at an expense of four thousand five hundred dollars." "(6) That said city of Huron, from the year 1883 to July 21, 1890 through its city council, operated, controlled, and maintained said waterworks, and made all needful rules and regulations concerning the distribution and use of water supplied by said waterworks for the prevention and extinguishment of fires, and to supply the citizens and taxpayers at a moderate and reasonable rate in accordance with the provisions of section 7, subd. 9, of the charter of said city." "(8) That, at the time of the commission of the grievances hereinafter mentioned, said waterworks were owned by, and were of great value to, said city taxpayers of said city of Huron, amounting, as informed and believed by the plaintiffs, to at least one hundred thousand dollars." (12) That "the mayor and city council of said city of Huron, on or about the 21st day of July, 1890, did unlawfully and wrongfully, and in violation of the city charter and their high and legal duties and trust reposed in them by the taxpayers and corporators of the city of Huron, execute and deliver to the defendant, the Huron Waterworks Com-

pany, a deed in terms conveying to said defendant, the Huron Waterworks Company, the entire valuable waterworks system of and belonging to the city of Huron, including all machinery, buildings, grounds, engines, boilers, watermains, hydrants, artesian well, pumps, and all property and effects of every description appertaining to said waterworks system, and placed the said defendants, the Huron Waterworks Company in full possession and control of the same, without the consent and to the great injury of the taxpayers and corporators of the city of Huron." The plaintiffs concludes with a prayer that the sale and conveyance might be declared null and void; that the officers of said city be enjoined from paying over to the Huron Waterworks Company the rents for the use of water for the city purposes contracted to be paid by the common council of the city; and that the possession of said waterworks property be restored to the city.

The court, among others, found the following facts: "Fourth. That the city of Huron made said conveyance in pursuance of an agreement to make the same, entered into on the 16th day of July 1890, at which time ten thousand dollars was paid into the city treasury by the Dakota Farm Mortgage Company, for the use of said Huron Waterworks Company, and on the 21st day of July, 1890, the balance of thirty-five thousand dollars of the purchase price was paid into the city treasury by the Dakota Farm Mortgage company for the use of said Huron Waterworks Company, and on that day the city executed said deed of conveyance, and delivered the same to said Huron Waterworks Company, and placed said company in possession of said waterworks." "Seventh. That said water works plant was constructed and used by said city of Huron for the convenience of the citizens of the compact community embraced within the corporate limits of said city, for furnishing water to private consumers, for domestic and power purposes, and for the protection of said city and its inhabitants from the ravages of fire, and the same has at all times been used for those purposes, both by the city before the sale, and by said

waterworks company since said sale." "Tenth. I find that neither the city, nor the taxpayers of the same, have ever paid or tendered back to the said waterworks company any part of the purchase price of the said waterworks, or any part of the sum paid out for the repairs or extensions of said waterworks system, and no effort has been made on the part of the city or taxpayers to place the waterworks company in the same condition as they were before the sale and delivery of said property."

The material facts in the action of Huron Waterworks Co. v. City of Huron are stated in the opinion delivered in that case on a former appeal, reported in 54 N. W. 652, 3 S. D. 610, and, it is sufficient to say, its object was to obtain an injunction against the officers of the city, restraining them from interfering with the waterworks property.

It will not be necessary to notice the numerous assignments of error, as we shall confine ourselves to the discussion of only two questions raised by the record, which are: First. Did the common council of the city of Huron possess the power, unaided by state legislation, to sell and transfer the Huron Waterworks system to the Huron Waterworks company, a private corporation? Second. If the city council did not possess the power to dispose of the waterworks property, can the city of Huron regain possession of the same, without refunding to the Huron Waterworks Company the money advanced or paid by it as consideration for the same?

The learned counsel for the appellants the city of Huron, H. Ray Myers, and Henry Schaller contend: First. That the waterworks system of the city of Huron, having been constructed, by virtue of a power conferred upon the city, at the expense of the corporation, became the property of the city, for public use, and was charged with a trust, and that the common council of said city, without the sanction of state legislation, did not possess the power to sell or dispose of the same. Second. That the waterworks system of the city of Huron, having been constructed, kept, and maintained for public purposes, namely, for the supply of water

for the extinguishment of fires within the corporate limits of the city, and for the supply of the inhabitants of said city with pure and wholesome water for domestic purposes, was clothed with a public trust of which the inhabitants of said city were the beneficiaries, and the common council of said city could not, without the consent of the legislative power of the state, divest said city of the trust.  Third. That the only power conferred upon the city of Huron by its charter was the power to "construct and maintain" waterworks for the city, and that the power to "construct and maintain" does not include the power to sell or dispose of the same.  Fourth. That the attempted sale and transfer of the said waterworks by the mayor and common council was without authority and void, and that such sale being void, the city of Huron, in its corporate capacity, is entitled to the possession of said waterworks property, without refunding to the pretended purchasers, the Huron Waterworks Company, the amount paid by it as the consideration of said purchase.

The learned counsel for the respondents insists: "First. The city had power under its charter to dispose of this property, because it was erected for the private advantage of the people of the compact community of which the municipality was composed, and is not charged with any public trust for the general public.  Second. That the property was not devoted to a different use from that for which it was erected, and the city had the power to contract with a private corporation, and for such purpose, and for its maintenance, the location of the legal title is a matter of no concern whatever.  Third. That, even if the city has made a contract in excess of its powers, it cannot be relieved from the effects of such contract until it has placed the plaintiff in the same position as it was before the contract was entered into.  Fourth, That, if the city has exercised a power beyond its charter, only the state can complain of such action in an appropriate proceeding instituted by the state.  *  *  *  Sixth. The city, while it was authorized to, was not bound to maintain these waterworks, and the court cannot compel it nor its officers to do so.  *  *  *  Eighth.

All the contracts and deeds, taken together, are only an appropriate means of carrying out the powers conferred upon the city. They are only an appropriate means of providing for the maintenance of the waterworks system and for extensions to the same.  *  *  *"

The city of Huron was incorporated under a special charter, and there are only three sections called to our attention as bearing upon the question, which are as follows: Section 1 provides: "That the city of Huron  *  *  * shall have power to make all contracts necessary to the exercise of its corporate powers, to purchase, hold, lease, transfer and convey real and personal property for the use of the city  *  *  * and to exercise all the rights and privileges pertaining to a municipal corporation." Section 7, pt. 8, provides as follows: "The city council shall have power  *  *  * to organize and support fire companies, hook and ladder companies, and provide them with engines and all apparatus for extinguishment of fires,  *  *  * to construct and furnish reservoirs, wells, cisterns, aqueducts, pumps and other apparatus for protection against fires, and to establish regulations for the prevention and extinguishment of fires." Section 7, pt. 9 provides as follows: "The city council shall have power  *  *  * to construct and maintain waterworks and make all needful rules and regulations concerning the distribution and use of water supplied by such waterworks."

The waterworks of said city, as found by the court, were constructed and used by said city of Huron for protection against fire and for domestic purposes, and it had been so maintained and used for a number of years prior to said alleged sale. They were constructed by the corporation and at the expense of the same. No express power to sell or convey said property has been conferred upon the mayor and common council of said city, nor upon the corporation itself, unless such power is included in the powers conferred upon the city by section 1, which, as we have seen, provides "that the city of Huron  *  *  * shall have power  *  * *  to purchase, hold, lease, transfer and convey real and personal

property for the use of the city, * * * and to exercise all the rights and privileges pertaining to a municipal corporation." The counsel for the respondents concedes that there is a class of property owned by a city that the common council of a city do not possess the power to sell, and he admits that public parks, squares, commons, cemeteries, etc., come within this class; but he insists that the waterworks of a city, though constructed by the city at the expense of the corporation, and used for protection against fire, and for the purposes of supplying pure and wholesome water to the citizens, do not belong to this class. It is necessary, therefore, to determine the nature and character of waterworks properly held by a city. The grounds upon which municipal corporations are denied the power to sell and convey the class of property above referred to are that such property is held by the corporation for public use, and is therefore charged with a public trust of which the corporation cannot divest itself, except by the express authority of the lawmaking power of the state.

The duties imposed upon municipal corporations for governmental purposes purely need not be considered, as it cannot be claimed that the exercise of the power to create and maintain city waterworks is strictly a governmental purpose, so far as it relates to the state at large. Neither are public squares, parks, wharves, cemeteries, landing places, fire apparatus, etc., held for governmental purposes, in the sense that they relate to the general public of the state; but they are governmental in the sense that they exist for public use,—that is, for that portion of the public embraced within the limits of the city. This distinction is well stated by Judge Dillon in his work on Municipal Corporations. That learned author says: "As respects the usual and ordinary legislative and governmental powers conferred upon a municipality, the better to enable it to aid the state in properly governing that portion of its people residing within the municipality, such powers are in their very nature public, although embodied in a charter, and not conferred by laws general in their nature and applicable to the entire state. But powers or franchises of an excep-

tional or extraordinary or nonmunicipal nature may be, and sometimes are, conferred upon municipalities, such as are frequently conferred upon individuals or private corporations. Thus, for example, a city may be expressly authorized in its discretion to erect a public wharf, and charge tolls for its use, or to supply its inhabitants with water or gas, charging them therefor and making a profit thereby. In one sense such powers are public in their nature, because conferred for the public advantage. In another sense, they may be considered private, because they are such as may be, and often are, conferred upon individuals and private corporations, and result in a special advantage or benefit to the municipality as distinct from the public at large. In this limited sense, and as forming a basis for the implied civil liability for damages caused by the negligent execution of such powers, it may be said that a municipality has a private as well as a public character. And so, as hereafter shown, a municipality may have property rights which are so far private in their nature that they are not held at the pleasure of the legislature." 1 Dill. Mun. Corp. § 27. While parks, squares, wharfs, landing places, fire apparatus, etc., are not absolutely necessary, to enable a municipal corporation to perform its strictly governmental duties, so far as they relate to the state at large, they are so far held for governmental purposes that they cannot be appropriated to any other use without special legislation. Mr. Chief Justice WAITE, in speaking of this class of city property in Meriweather v. Garrett, 102 U. S. 473, says: "(1) Property held for public uses, such as public buildings, streets, squares, parks, promenades, wharves, landing places, fire engines, hose and hose carriages, engine houses, engineering instruments, and generally everything held for governmental purposes, cannot be subjected to the payment of the debts of the city. Its public character forbids such an appropriation." And Mr. Justice FIELD, in the same case (page 513) says: "What, then, is the property of a municipal corporation, which, upon its dissolution, a court of equity will lay hold of and apply to the payment of its debts? We answer, first, that it is not prop-

erty held by the corporation in trust for a private charity, for in such property the corporation possesses no interest for its own uses; and, secondly, that it is not property held in trust for the public, for of such property the corporation is the mere agent of the state. In its streets, wharves, cemeteries, hospitals, court-houses and other public buildings, the corporation has no proprie-tary rights distinct from the trust for the public. It holds them for public use, and to no other use can they be appropriated with-out special legislative sanction. It would be a perversion of that trust to apply them to other uses."

It is difficult to perceive upon what principle a distinction can be made between the waterworks of a city, constructed at the expense of the corporation and used to supply water for fire pur-poses, domestic use, and other city purposes, and public parks, squares, fire apparatus, public buildings, etc., used for public pur-poses, and the courts in the latter decisions seem to make no such distinction. Judge DILLON, in his work above referred to, says: "In some of the states it is held that the private property of mu-nicipal corporations—that is, such as they own for profit, and charged with no public trusts or uses—may be sold on execution against them. * * * On principle, in the absence of statutable provision, or legislative policy in the particular state, it would seem to be a sound view to hold that the right to contract and the power to be sued give to the creditor a right to recover judgment, that judgments should be enforceable by execution against the strictly private property of the corporation, but not against any property owned or used by the corporation for public purposes, such as buildings, hospitals, and cemeteries, fire engines and ap-paratus, waterworks, and the like; and that judgments should not be deemed liens upon real property, except when it may be taken in execution." Dill. Mun. Corp. sec. 576. It will be noticed that Judge DILLON places waterworks in the same class with public buildings, hospitals, cemeteries, etc., and in this the learned author is fully supported by the very able decision of the supreme court of the United States in New Orleans v. Morris, 105 U. S. 600. Mr. Jus-

tice MILLER, speaking for the court, says:   "The learned counsel, in the oral argument and in the brief, substantially concedes that the waterworks themselves, in the hands of the city, were not liable to be sold for the debts of the city.   And, if no such concession were made, we think it quite clear that these works were of a character which, like the wharves owned by the city, were of such public utility and necessity that they were held in trust for the use of the citizens.   In this respect they were the same as public parks and buildings, and were not liable to sale under execution for ordinary debts against the city.   *   *   *   In the next place, the city was not situated, as regards this property, as a private person would be in the purchase and acquisition of ordinary property.   The city could not have sold this property as the law stood.   It could not have put it into a joint stock company without the aid of a new law.   The legislature, in authorizing the change in the form of the ownership of the waterworks, could, since it injured nobody and invaded no one's rights, say, as to the city, whether it be called new property or not, that such ownership could continue exempt from execution.   As the city was using no means in acquiring this stock which could have been appropriated under any circumstances to the payment of the debts of the appellees, the legislature impaired no obligation of the city in declaring the stock thus acquired exempt from liability for debts." This decision is important, not only as being made by the highest court of the nation, but as being the unanimous opinion of that court upon the question, and made subsequently to the decision in the Meriweather Case, above cited.   It is clear and to the point that the waterworks of a city belong to the same class of property as "wharves, parks," etc., and holds distinctly that the waterworks property of a city cannot be sold, except by authority of the legislature, and the court says:   "We think it quite clear that these works were of a character which, like the wharves owned by the city, were of such public utility that they were held in trust for the use of the citizens."   The same view is taken by the court of appeals in the state of New York in the case of City of Roches-

ter v. Town of Rush, 80 N. Y. 302. In that case the court says: "The argument of the appellant that the property in question would properly be exempt from a city tax, as it was procured by a tax upon property within the city, but not from a county tax, but the people of the county were not taxed to procure it, would apply with equal force to the city hall and engine houses and machines and equipments which make those houses necessary, and, if sound, would subject them to the hazard of sale under a treasurer's warrant for the enforcement of a county tax. I am unable to perceive that in any sense the waterworks can be regarded as the private property of the city, as distinguished from property held by it for public use. These considerations lead to the opinion that the property was not taxable, and that the proceedings on the part of the assessors of the town of Rush in regard thereto cannot be sustained."

The supreme court of Connecticut, in the well considered case of Town of West Hartford v. Board of Water Com'rs., 44 Conn. 360, lays down the same doctrine. In that case, the court says: "The introduction of a supply of water for the preservation of the health of its inhabitants by the city of Hartford is unquestionably now to be accepted as an undertaking for the public good, in the judicial sense of that term; not indeed, as the discharge of one of the few governmental duties imposed upon it, but as ranking next in order. For this purpose the legislature invested the city with a portion of its sovereignty, and authorized it to enter within the territorial limits of West Hartford, and condemn by process of law certain lands therein for the purpose of storing water for its own inhabitants. It authorized the assessment of a tax upon property within the city of Hartford for money wherewith to pay for this land, because the taking and holding was for the public good." Having, as we think, established the proposition, that the waterworks of a city, when constructed and owned by the city, are to be regarded the same as other city property held for public use, and therefore charged and clothed with a public trust, it would seem to follow that such property cannot be sold

and conveyed by the mayor and common council of the city, unless under special authority conferred upon them to so sell and convey the same, by the legislative power of the state. Judge Dillon says in his work before referred to, that they (municipal corporations) cannot dispose of property of a public nature, in violation of the trusts upon which it is held, and they cannot, except under valid legislative authority, dispose of the public squares, streets, or commons. See 2 Dill. Mun. Corp. sec. 575, and cases cited. In the recent case of Roberts v. City of Louisville (decided in 1891) 17 S. W. 216, the same doctrine was laid down by the supreme court of Kentucky as to the wharves held by the city of Louisville. In that case the court says: "The power of a municipal corporation to acquire land for the purpose of erecting wharves thereon, and to charge wharfage, is not a necessary incident of its charter, but must, like all its other powers, be derived directly from the legislature, of course to be exercised within the limits and upon conditions of the grant. Dill. Mun. Corp. sec. 110. And, looking to the nature and purpose of such special grant, it must be regarded as a trust, involving duties and obligations to the public and individuals which cannot be ignored or shifted; for the power to acquire implies the duty of the municipality, through its governing head, to maintain and preserve wharf property for the benefit of the public, without discrimination or unreasonable charges for individual use. In every instance, so far as we have observed, wharf property of the city of Louisville has been acquired under act of the legislature, and paid for by taxation; and in no case is there evidence of legislative intention it should be held otherwise than in trust for use of the public, and in aid of trade and commerce. The wharf property being so held, the city of Louisville cannot transfer its title or possession, nor, according to a plain and well-settled principle, can the general council, which is by statute invested with power of control, and burdened with the duty of maintaining, preserving and operating the wharves, either delegate the power or disable itself from performing the duties." In that case the judgment of the court below

dismissing the bill for an injunction was reversed, the court, in effect, holding that an injunction enjoining the mayor and common council from making the sale should be granted. In the case of Smith v. Mayor, etc., of Nashville, 12 S. W. 924, also a late decision made in 1890, the supreme court of Tennessee says: "It is seen at once that the waterworks are a corporate property. That is not denied. The debate is with respect to the nature of the use. As to that, for the sake of convenience, we divide all the purposes for which the city furnishes water into three classes: (1) To extinguish fires and sprinkling the streets; (2) to supply citizens of the city; (3) to supplying persons and factories adjacent to but beyond the corporate limits. If the business were confined to the first class, there would be no ground to base a decision on, so clearly would the use be exclusively for public advantage. We think there can be but little more doubt about the second class, especially in view of certain words in the city charter, to which we will advert presently. * * * Having accepted the charter, and undertaken to exercise this authority in the manner detailed by the witness, it cannot be held that the city in doing so is engaging in a private enterprise, or performing a municipal function for a private end. It is the use of corporate property for corporate purposes, in the sense of the revenue law of 1877. It can make no difference whether the water be furnished the inhabitants as a gratuity or for a recompense, the sum raised in the latter case being reasonable, and applied for legitimate purposes."

From this examination of the authorities, we conclude that there is no distinction between the nature of waterworks property owned and held by the city, and public parks, squares, wharves, quarries, hospitals, cemeteries, city halls, courthouses, fire engines, and apparatus, and other property owned and held by the city for public use. All such property is held by the municipality as a trustee in trust for the use and benefit of the citizens of the municipality, and it cannot be sold or disposed of by the common council of the city, except under the authority of the state legisla-

ture.   Such property, as before stated, is private property, in the
sense that the municipality cannot be deprived of it without com-
pensation, no more than can a private corporation be deprived of
its property by the law-making power.   But such property is so
owned and held by the municipality as the trustee of the citizens
of the municipality, for the use and benefit of such citizens.   It
has been acquired by the corporation at the expense of the tax-
payers of the city, for their use and benefit, and the law will not
permit the corporation to divest itself of the trust, nor to deprive
the citizens of their just rights as beneficiaries in the same.

Counsel for respondents has called our attention to a number
of cases which he contends hold a contrary doctrine from those to
which we have directed attention.   But, after a careful examina-
tion of those authorities, we are inclined to the opinion that there
is no such conflict as the counsel suggests.   The leading case cited ·
is Bailey v. New York, 3 Hill, 538, in which Chief Justice Nelson,
in the course of the opinion, uses language, taken by itself, that
possibly might be construed as favorable to the respondents' con-
tention, but it must be construed with reference to the case before
the court.   The questions we are now considering were not in-
volved, the only question there being whether or not the city of
New York was liable for damages caused by a defective dam
erected in the construction of its water system.   The views ex-
pressed by the chief justice in that case have been repudiated by
the courts of New York.   In Darlington v. Mayor, 31 N. Y. 164,
the court of appeals expressly disapprove of the doctrine an-
nounced by Chief Justice Nelson.   That court, on pages 200 and
201, says:   "If this case of Bailey v. New York had rested where
it was left by the supreme court, though I should be obliged to
acknowledge my inability to appreciate the distinction suggested
between the public and private functions of the city government,
the judgment would have been entitled to a certain weight as au-
thority.   But a new trial took place, pursuant to the judgment of
the supreme court, when the plaintiff recovered a very large ver-
dict, and the case was presented to the court for the correction of

errors, whose judgment of affirmance is reported in 2 Denio, 433. The chancellor and three senators delivered written opinions in favor of affirmance, and the president of the senate an opinion for reversal. None of the opinions even alluded to the ground taken in the opinion of the supreme court. * * * The liability of the defendants being established by the court of ultimate review, on an entirely different theory from that which affirmed the enterprise of conveying water into the city to be a private work, as distinguished from an act of municipal government, the doctrine of the opinion of the supreme court was substantially repudiated, and cannot, therefore, be considered as a precedent. It is but the opinion of the eminent chief justice and learned associates, and does not, like a final adjudication upon the cause of action, settle any principle of law." And that court, speaking of the question now before us, says: "The subjects of the several actions, in the cases I have been examining, were as clearly matters of municipal government as any which could be presented. Nothing could, in the nature of things, partake less of a private character than the supplying of water to and the cleaning of the streets of a town containing nearly a million of inhabitants. If these were not public subjects, and under the control of the legislature, the city is not subordinate to the supreme legislative power on any conceivable subject. It is an *imperiun in imperio.*" We have already seen that in the case of the City of Rochester v. Town of Rush, 80 N. Y. 302, the court of appeals of New York distinctly placed waterworks in the class of property held for public use, and therefore exempt from taxation. Georgia held that the common council of the city of Rome had power to mortgage the waterworks for money advanced for its construction. ·The court in that case was construing a charter in which the powers conferred upon the common council of the city of Rome were exceedingly broad and comprehensive, —much more so than those conferred upon the city of Huron as a corporation,—and they were conferred directly upon the common council itself. The decision is one of too local a character and too dependent upon the provisions of the

charter to be of much weight, and so it seems to have been regarded, as it is rarely referred to by the courts; and Judge Dillon, in citing the decision, adds: "Query, as to implied power to mortgage waterworks, see *supra,* section 576, and note 577,"—thus indicating that that learned author does not regard the doctrine of the court as sound in principle. The case of Adams v. Railroad Co., 2 Cold. 645, involved the sale, by the common council of the city, of some outlying lands donated to the city. The land had not been devoted to any public use, and was not held by the city in trust for public purposes. It was therefore strictly private property of the city, held like the private property of a natural person or private corporation. The decision in that case, therefore has no application to the case at bar. The doctrine laid down in the case of Western Sav. Fund Soc. v. City of Philadelphia, 31 Pa. St. 175, does not seem to be applicable to this case. The contest there was between the city and a private gas company in which the city held stock. The case is somewhat complicated, and it is not easy to determine the question actually decided by the court. There is language used by the judge writing the opinion that cannot be sustained in the light of more modern authority, but we discover nothing in the decision itself that is in conflict with the doctrine that waterworks, when constructed and owned by the city, are held for public use, and therefore charged with a public trust. Our conclusion is that the waterworks in controversy were held by the city of Huron for public use, and therefore charged and clothed with a public trust, and that the mayor and common council of the city had no authority to sell and transfer the same. "Municipal corporations are created and exist for the public advantage, and not for the benefit of the officers or of particular individuals or classes. The corporation is the artificial body created by the law, and not the officers, since these are, from the lowest up to the council or mayor, the mere ministers of the corporation." 1 Dill. Mun. Corp. § 21.

The common council of the city of Huron was, to a certain extent, at least, but agent of the corporation, and possessed only

such authority as was conferred upon it by its charter. While it probably possessed the power of disposing of strictly private property held by the city, and not held for public use, and therefore not charged with a trust, it did not possess the power to dispose of the city waterworks constructed by the corporation, and held for public use; and the power conferred by the first section of its charter to sell and dispose of the property of the city must be held to be limited to that class of property held as strictly private property, and not charged with any public use.

Having arrived at the conclusion that the sale of the waterworks by the city council was made without authority, and was void, it becomes necessary to determine the second question presented, namely, is the city of Huron entitled to the possession of the waterworks property without refunding to the Huron Waterworks Company the money paid by it to the city treasurer as the consideration therefor, and the money expended by said company in making improvements and repairs thereon? It will be noticed from the findings of fact in reference to the payment of the consideration, that it was paid to the city treasurer, or "into the city treasury." It is not found that the treasurer paid out the same by the order of the common council, upon any legitimate or other indebtedness of the city, or that he has appropriated it to any city purpose whatever. The act of the city treasurer in receiving the money cannot bind the city to refund it. As city treasurer, his only authority is to receive and receipt for moneys properly due the city, or that are legally paid into the city treasury. The money paid for this waterworks property did not belong to the city, and the money was therefore paid to one who had no authority, as treasurer or agent of the city, to receive it in the name of the city and apply it in the payment of city indebtedness. The money in the hands of the treasurer did not belong to the city, and there being no finding that the city, in its corporate capacity, accepted and appropriated the money, the city is not liable to refund the same. This subject was very fully considered and discussed in Herzo v. City of San

Franciso, 33 Cal. 134. That was an action brought to recover of the city money paid by the plaintiff for "City Slip property," the sale of which by the city had been held illegal and void. The supreme court in that case held that the plaintiff could not recover, as he had failed to show, and the court below had failed to find, that the corporation in its corporate capacity had appropriated the money paid, although it was shown that the money paid for the property had been paid into the city treasury and paid out by the treasurer on city indebtedness. The court in that case, on page 147 says: "The city, in our opinion, not being responsible for the acts of her assumed agents up to and including the placing of the money in the treasury, and the money being then the money of the plaintiff, responsibility for the money does not attach to her till she has converted it to her own use. The unauthorized act of the treasurer in paying it out to a third person is not the act of the city, and it makes no difference in this respect whether he pays it to a creditor of the city or to any other person. Suppose that he or the secretary of the land committee, while the money was in his hands, acting upon the fact, of which all persons concerned had notice, that the sale was a nullity, had returned the money to the plaintiff, it could not be said that the act of payment was the act of the city. She could not rightfully do anything with the money, and, to be responsible for it, she must have wrongfully converted it to her own use, and this she must have done by some corporate act, and the only act competent for that purpose was an appropriation, for that is the only manner in which she can dispose of money. The reports of the secretary of the land committee and of the treasurer, and the exceptance of the reports by the common council, neither changed the ownership, the custody nor control of the money,—it still remained in the hands of the treasurer, and continued the property of the plaintiff."

In the case of Pimental v. City of SanFrancisco, 21 Cal. 357, one of the same class of "City Slip cases" above referred to, the plaintiff was held entitled to recover back the money paid; but

upon the ground that it was shown, not only to have been received by the city treasurer, but appropriated by the corporate authority of the city, by ordinances and resolutions. In that case Chief Justice FIELD, speaking for the court, on page 361 says: "The moneys paid by the bidders went into the treasury of the city, and were afterward, by different ordinances and resolutions, appropriated to municipal purposes. To the different actions, as we have mentioned, various defenses have been interposed. In some of them, as already stated, the entire transactions giving rise to or connected with the alleged sale have been treated as transactions to which the city was an absolute stranger; in other words, a want of privity, as it is termed, between the bidders and the city has been alleged. This alleged want of privity, as we understand it, amounts to this: That inasmuch as the mayor and land committee had no authority to make the sale, they had no authority to pay the money which they had received from the bidders into the treasury of the city, and therefore no obligation can be fastened from such unauthorized act upon the city. The position thus restricted in its statement is undoubtedly correct, but the facts of the cases go beyond this statement. They show an appropriation of the proceeds, and the liability of the city arises from the use of the moneys, or her refusal to refund them after their receipt." The same doctrine is laid down in Agawam Natl. Bank v. South Hadley, 128 Mass. 503. In that case the court says: "But the plaintiff contends that it is entitled to recover upon the last count in the declaration for money had and received, and at the trial offered to show that the money paid or credited to the town treasurer upon the notes in suit was used by him in the payment of debts due from the town. This evidence was properly rejected. It fails to show that the money was received by the town in its corporate capacity, or that the act of the treasurer in applying it to the payment of its debts was ever authorized or ratified by the town. The difficulty is that the money was paid to one who had no authority as treasurer or as agent of the town to receive it in the

name of the town, and apply it to the payment of town debts.   If a town could be held in an action for money had and received, under such circumstances, then the purpose of the second and third sections of the statute would be wholly defeated.   It makes no difference that the treasurer used this specific money in payment of the town debts.   There is nothing to show any appropriation of such payments by the town to its own use, or any ratification of the act.   The money in the hands of the treasurer did not belong to the town."   Litchfield v. Ballou, 114 U. S. 190, 5 Sup. Ct. 820. It would be manifestly unjust and inequitable to require the city of Huron to refund the consideration paid for these waterworks, before it can be restored to the possession of the same, because the same was paid to and received by an officer of the city unauthorized to receive it.   If it had been further found by the court in this case that the city of Huron, through its proper corporate authorities, had appropriated the money so paid to the payment of the legitimate debts of the city, another question might have arisen, not necessary now to consider.   But it is clear. that, upon principle and authority, upon the findings in this case, the conclusions of law and the judgment should have been in favor of the city of Huron, H. Ray Myers, and Henry Schaller.   The circuit court, in arriving at a different conclusion, in our opinion, committed error. The judgments of the court below are reversed, and the case remanded, with instructions to the circuit court to correct its conclusions of law in accordance with this opinion, and render the proper judgments in favor of the city of Huron, H. Ray Myers, and Henry Schaller, as prayed for in their complaint, and against the Huron Waterworks Company; and it is so ordered, all the judges concurring.