LAKE COUNTY WATER & LIGHT COMPANY ET AL. v. WALSH.

[No. 19,722. Filed November 25, 1902. Rehearing denied February 3, 1903.]

MUNICIPAL CORPORATIONS.—*Property Held for Public Use.—Sale by City.*—Property held and used by a city for public purposes is held in trust for the inhabitants, and can not be sold or disposed of

Lake County Water & Light Co. *v.* Walsh.

unless the city is specially authorized by the legislature to make such sale or disposition and thereby determine the trust.   *p. 39.*

MUNICIPAL CORPORATIONS.—*Water-Works.—Electric Light Plant.—Property for Public Use.*—Water-works and an electric light plant constructed or purchased by the city and maintained by it for the extinguishment of fires, for domestic purposes, for lighting streets, and for use in the houses of the inhabitants of the city are to be regarded as property devoted to public use.   *pp. 42-45.*

From Lake Superior Court; *H. B. Tuthill,* Judge.

Suit by Redmond D. Walsh against the Lake County Water & Light Company and others. From a judgment for plaintiff, defendants appeal.   *Affirmed.*

*Wood & Oakley, V. S. Reiter, Walter Olds* and *N. D. Doughman,* for appellants.

*W. B. Reading, B. M. Cheney* and *A. F. Knotts,* for appellee.

DOWLING, J.—This is a proceeding to enjoin the city of East Chicago and William E. Williams, its treasurer, from paying to the appellant certain alleged water rents and charges for electric lighting; to set aside as fraudulent a deed of conveyance of a water-works plant and an electric light plant, executed by the city of East Chicago to the Lake County Water & Light Company; and for the appointment of a receiver to take possession of said water and electric light plants, and to operate them pending this litigation.

Issues were formed, and upon the trial the court found for the appellee, the plaintiff below, and, over a motion for a new trial, a judgment and decree were entered according to the prayer of the complaint.

The Lake County Water & Light Company appeals, and rests its demand for a reversal of the judgment upon the supposed errors of the trial court in overruling the demurrer to the complaint, and in denying its motion for a new trial.

The complaint states, in substance, that the appellee was and is a property owner and taxpayer of the city of East Chicago, a municipal corporation organized under the general laws of the State of Indiana; that on January 30, 1900, the said city of East Chicago owned a water-works plant and an electric light plant and system, operating them for the convenience of the inhabitants of the said city, and the protection of their property; that prior to November 3, 1899, the said city had assumed the bonded debt of the East Chicago Light & Power Company, but that on said last named day it and its treasurer, Williams, had been permanently enjoined from paying said debt; that prior to November 9, 1899, said city had attempted to assume the bonded debt of the East Chicago Water-Works Company but that on said day said city and its treasurer had been permanently enjoined from paying the same; that afterwards, between November 9, 1899, and January 30, 1900, the mayor and common council of said city and the owners and holders of the bonds of the said East Chicago Light & Power Company, whose names were unknown to the appellee, entered into a conspiracy to defraud the taxpayers of said city, of whom the appellee was one, and by indirect means to bring about the payment of the bonded indebtedness of the said water company, and said light and power company; that in furtherance of said scheme, the said conspirators caused the said Lake County Water & Light Company to be organized as a private corporation; that on January 30, 1900, the said city, by its mayor and common council, conveyed the said water-works plant and electric lighting plant by deed to the said Lake County Water & Light Company, and put the said grantee in possession of the same; that the said conveyance was by quit-claim deed, and the consideration named therein was $60,000; that the property so conveyed included not only the land occupied and used for said plants, but also all the

buildings, rights of way, street plants, and other property and appliances of said water-works and electric light companies, all of which were subject to a bonded indebtedness aggregating $60,000; that a pretended appraisement of the said property was made, but that it was irregular and void; that the only consideration for such conveyance was the assumption by the said Lake County Water & Light Company of the said bonded debts of the said water and electric light companies; that, to carry out the design of the said conspirators to subject the said city of East Chicago to the payment of the said bonded debts of the said companies, an ordinance was passed by the mayor and common council of said city granting to said Lake County Water & Light Company a franchise to maintain and operate said water-works plant for a term of thirty years, and binding said city to pay to the said Lake County Water & Light Company $1,480 per annum, in twelve equal monthly instalments, for hydrant rentals for ninety-five hydrants; that an ordinance was also passed by the said mayor and common council granting to the said Lake County Water & Light Company a franchise to maintain and operate said electric light plant for a term of ten years from January 30, 1900, and binding said city to pay to the said Lake County Water & Light Company $4,840 per annum, in monthly instalments, for lights for the public use; that all of said proceedings were part of a subterfuge by which said conspirators sought to evade the injunction before that granted against the said city prohibiting it from paying the said bonded debts of the said East Chicago Water-Works Company and the East Chicago Light & Power Company; that since January 30, 1900, Williams, as city treasurer, has paid out $4,840 in obedience to the order of the common council of said city of East Chicago, and in furtherance of the said scheme of the said conspirators to pay off the bonded debts of the said

East Chicago Light & Power Company and the East Chicago Water-Works Company, and is about to pay the further sum of $1,260 to said Lake County Water & Light Company; and that, unless enjoined, he will continue to pay the sum of $1,260 per annum for a term of ten years, and the sum of $873.33⅓ per annum for the further term of twenty years after said term of ten years; that the Lake County Water & Light Company, its officers and agents, threaten, if proceedings are taken against it, to enjoin the payment of said monthly rentals and charges, to shut down the said two plants, and to apply to the circuit court of the United States for the district of Indiana at the city of Indianapolis for the appointment of a receiver; and that the closing of said plants, even for a short time, would cause irreparable damage to said city of East Chicago and its inhabitants; and that the said Lake County Water & Light Company is, and always has been wholly insolvent. Copies of the several ordinances referred to, and of the deed mentioned in the complaint, were filed with and made parts of that pleading. Prayer for a temporary injunction restraining the city of East Chicago, and its treasurer, from paying said rentals and charges, for a judgment setting aside the said deed from the city of East Chicago to the said Lake County Water & Light Company, the appointment of a receiver to take charge of and operate said water and light plants pending this litigation, and that on the final hearing the injunction be made permanent.

It is not alleged that the city of East Chicago is indebted beyond the constitutional limit, or in any amount whatever. There is no averment of the value of the water and electric plants. Neither is there any charge that the rentals agreed to be paid by the city for fire hydrants and for electric lighting are unreasonable, nor that the city could obtain such service for lower prices, nor that it could oper-

ate the plants itself, and supply the city with water and light at less cost. The nature and terms of the judgment alleged to have been rendered enjoining the city from assuming the bonded debts of the East Chicago Water-Works Company and the East Chicago Light & Power Company, are not set out. The connection of the East Chicago Water-Works Company and of the East Chicago Light & Power Company with the property alleged to have been owned by the city of East Chicago and conveyed by it to the Lake County Water & Light Company, is not disclosed by the complaint. Nor do we think that the averments of the complaint are sufficient as a charge of fraud against the city, its treasurer, and common council, and the East Chicago Light & Power Company. The allegations of the complaint are not nearly so full and particular as could have been wished, and, in view of the omissions we have pointed out, the question as to the sufficiency of that pleading is reduced to very narrow limits.

The propositions of law stated by counsel for appellee, by which they seek to sustain the complaint, are these: "(1) Under the provisions of the State Constitution, a municipal corporation can not for any purpose, or in any manner, become indebted to an amount exceeding two per cent. of the value of its taxable property. (2) The common council of a city can not sell or transfer property held by it for public uses or governmental purposes. Waterworks and electric light systems belong to this class. (3) Public policy forbids that property held by a municipal corporation for public uses or for governmental purposes shall be sold to satisfy debts of the city." The fourth, fifth, sixth, seventh, eighth, ninth, and eleventh propositions relate to the constitutional limitation of the right of a city to become indebted. "(10) Grants by legislature to a corporation, whether public or private, will be strictly construed." "(12) The fact that water rentals are col-

lected by a city from private concerns does not constitute 'engaging in business for gain or profit.'"

The first, fourth, fifth, sixth, seventh, eighth, ninth, and eleventh propositions are wholly unimportant, and may be laid out of the case, for the reason, before stated, that the complaint contains no allegations to which they apply. On the other hand, if all of the positions assumed by the appellant should be conceded, still the complaint would be sufficient if a city organized under the general statutes of this State has not, in the absence of special legislative authority, the power to sell property held by it for public uses, and if the water-works and electric light plant, mentioned in the complaint, were so held by the city of East Chicago.

In determining the question whether cities are authorized to sell and convey property held for public uses or purposes, we must be governed by the rule laid down in *Pittsburgh, etc., R. Co.* v. *Town of Crown Point,* 146 Ind. 421, 422, as follows: "Doubtful claims to power or any doubt or ambiguity in the terms used by the legislature are resolved against the corporation. *Minturn* v. *Larue,* 23 How. (U. S.) 435; *Bloom* v. *Xenia,* 32 Ohio St. 461; *Ravenna* v. *Pennsylvania Co.,* 45 Ohio St. 118, 12 N. E. 445; Cooley, Const. Lim., 233, 234; 1 Dillon, Mun. Corp., §§89-91; Tiedeman, Mun. Corp., §110."

The statutes bearing upon the question of the power of cities incorporated under the general laws of this State to sell property held by them are the following: Section 3548 declares that any city owning real estate shall have power to sell and convey the same as the common council may deem expedient. Section 3549 provides that such sale must be authorized by a vote of two-thirds of the members of the common council. Section 3550 requires that the real estate to be sold shall first be appraised by three disinterested freeholders of such city, to be appointed by

the judge of the circuit court of the county in which such city is situated. Section 3541, clause 45, authorizes the city to purchase, hold, or convey real estate for the purpose of constructing public buildings thereon, or using the same for a public park, or other public purpose. Section 3541, clause 47, provides that the common council may, upon the petition of a majority of the legal voters of the city, sell any public square or public landing of such city, or part thereof, and convey the same by deed; the moneys arising from such sale to be deposited in the city treasury to be expended in the purchase of any other public square, or public landing, and for the improvement of the same. Section 3550a (Acts 1895, p. 151) gives to the common council of certain small cities the power, by a vote of a majority of its members, to sell and convey to any corporation or body politic any public square, market square, market-place, fractional piece of ground, or public park, owned or held by such city, or within its corporate limits, to be held by such corporation or body politic, and devoted to any public purpose. §§3548, 3549, 3550, 3541, clauses 45, 47, 3550a Burns 1901, §§3111, 3112, 3113, 3106 R. S. 1881 and Horner 1901.

The first three of the sections above referred to evidently relate to real estate held by the city for private purposes only. None of the other enactments purports to authorize the sale of any property held for public use, except such as is expressly mentioned in their provisions. These statutes clearly indicate that the power of a city to sell property devoted to any public use is restricted, and that, to enable a city to make a sale of such property, special authority must be granted to it by the legislature. Property so held is held upon a trust for the benefit of the inhabitants of the city; and the city as the trustee for such use can not, by its unauthorized act, destroy the trust. This principle was recognized by this court in *City of Fort Wayne* v. *Lake Shore, etc., R. Co.,* 132 Ind. 558, 563, 18 L. R. A.

367, 32 Am. St. 277, although the *dictum* on that subject was not, perhaps, necessary to the decision of the case. The facts were that the city of Ft. Wayne owned in fee, and subject to no conditions, a tract of land contiguous to its corporate limits, which it had purchased with the intention of using as a public park, but which had not yet been dedicated to that purpose. The city granted to a railroad corporation a portion of this tract, on certain conditions, which were supposed to be beneficial to the city. Subsequently the common council passed a resolution attempting to rescind its former proceedings, upon the ground, among others, that the city had no power to bargain away lands purchased for a public park. The action was brought by the successor of the railroad company to which the conveyance of the land had been made to enjoin the city from opening a street across said land, as the property of the city. In deciding the case, this court said that while the general rule is that municipal corporations possess the incidental right to dispose of the property, real and personal, of the corporation, of a private nature, unless restrained by charter or statute, yet they can not dispose of property of a public nature in violation of the trusts upon which it is held. The sale of the land by the city was sustained for the reason that although it had been purchased for the purposes of a public park, no steps had been taken to dedicate or apply it to that use. We find no conflict between the views expressed in the case just cited and the decision in *City of Terre Haute* v. *Terre Haute Water-Works Co.,* 94 Ind. 305. In the latter case, the city sold no property held for a public use, but disposed of shares of stock held by it in a private corporation. Indeed, the rule now under consideration is impliedly recognized. The court say: "The right to sell property *not held for a public purpose* is an incidental power inherent in all corporations public or private, unless withheld by the law under which they were organized."

In the case of the *Huron Water-Works Co.* v. *City of Huron,* 7 S. D. 9, 62 N. W. 975, 30 L. R. A. 848, 58 Am. St. 817, the court, in a very carefully prepared opinion, and after an exhaustive discussion of the question by counsel, held that the water-works of the city, constructed under a power conferred upon the city by its charter to construct and maintain water-works for protection against fires, and for furnishing the inhabitants thereof with a supply of pure water for domestic purposes, and constructed and maintained at the expense of the inhabitants of said city, were held as the property of the municipal corporation for public use, and charged with a public trust, of which the inhabitants of said city were the beneficiaries. Being so held, the court decided that the duty of the municipality as trustee of such public trust could not be discharged and devolved on another by a sale of such water-works by the city's common council, without legislative authority.

The supreme court of Utah, in *Ogden City* v. *Bear Lake, etc., Co.,* 16 Utah 440, 52 Pac. 697, 41 L. R. A. 305, declared that the provision of the charter of Ogden City, authorizing it to lease, convey, and dispose of property, real and personal, for its benefit, did not authorize it to lease or otherwise transfer its water-works system or its water right used in supplying its inhabitants with water. A special provision was held necessary to authorize the transfer of property so used.

In *Pike's Peak Power Co.* v. *City of Colorado Springs,* 105 Fed. 1, 44 C. C. A. 333, it is said that the water system and other public utilities of a city are held by the municipality and its officers in trust for the public purposes for which they were acquired and dedicated. The city and its officers may not renounce this trust, disable themselves from discharging it, or so divert or impair the public utilities that they become inadequate to accomplish the public purposes for which they were created.

A municipal corporation has no implied authority to dispose of lands which have been conveyed to it for the public benefit. Tiedeman, Mun. Corp., §229. Upon the same principle it has been held in many cases, in this and other states, that the property of a public corporation dedicated to or used for public purposes can not be sold under any legal process. *Lowe* v. *Board, etc.*, 94 Ind. 553, and cases cited. "Where property is owned by the corporation for any public use, or in trust, such as public buildings, fire engines, water-works, hospitals and sanitariums, the property cannot be reached by the writ of execution, and, as a necessary consequence of that conclusion, the judgment lien will not attach to such property." Tiedeman, Mun. Corp., §212.

It seems clear, upon the soundest reasoning and from the great weight of authority, that property held and used by a city for public purposes is held in trust for the inhabitants, and can not be sold or disposed of unless the city is specially authorized by the legislature to make such sale or disposition and thereby determine the trust. We find no such authority to dispose of property subject to a public use in the statutes of this State, except in the particular case referred to in §§3541, clause 47, 3550a Burns 1901 (Acts 1895, p. 151), and this act applies only to cities having a population of less than 2,200.

The remaining question is whether water-works and an electric light plant constructed or purchased by the city and maintained by it for the extinguishment of fires, for domestic purposes, for lighting the streets, and for use in the houses of the inhabitants of the city, are to be regarded as property devoted to a public use. Among the enumerated powers of cities under the general statutes of this State is the right to construct and establish works for furnishing the city with wholesome water. §3541, clause 26, Burns 1901, §3106, clause 26, R. S. 1881 and Horner 1901. And any city having a population of more than 5,000 may pur-

chase water-works owned by any person, corporation, or company. §§4272a, 4272e Burns 1901. So, too, full authority is given to cities to construct, own, and operate gas-works and electric light plants for the purpose of lighting their streets and alleys, and furnishing light to their inhabitants. §§3541, clause 28, 3543a *et seq.* Burns 1901; §4301 Burns 1901 (Acts 1883, p. 85).

The right to furnish water for protection against fire, to clean the streets, to flush sewers, and for the supply of the inhabitants, and the right to light the streets and public places, and to furnish gas or electricity to the inhabitants, are among the implied and inherent powers of a municipal corporation for the protection of the lives, health, and property of the inhabitants of the city, and, as to the lighting, as a check on immorality and crime. Unquestionably, these are public purposes. *Corporation of Bluffton* v. *Studabaker,* 106 Ind. 129; *City of Crawfordsville* v. *Braden,* 130 Ind. 149, 14 L. R. A. 268, 30 Am. St. 214; *Foland* v. *Town of Frankton,* 142 Ind. 546; *Town of Gosport* v. *Pritchard,* 156 Ind. 400.

It is said in *Huron Water-Works Co.* v. *City of Huron,* 7 S. D. 9, 62 N. W. 975, 58 Am. St. 817, 30 L. R. A. 848: "It is difficult to perceive upon what principle a distinction can be made between the water-works of a city, constructed at the expense of the corporation and used to supply water for fire purposes, domestic use, and other city purposes, and public parks, squares, fire apparatus, public buildings, etc., used for public purposes, and the courts in the later decisions seem to make no such distinction."

Again, Mr. Tiedeman states that: "As long as the government exercises the right directly and for the state's immediate benefit, no difficulty is experienced in determining what is a public use. There can be no doubt that land is devoted to a public use, when it is taken for the purpose of laying out parks, and public gardens, for the construction of public buildings of all kinds, water-works, aqueducts,

drains, and sewers, and the building of levees." Tiedeman, Mun. Corp., §234, and cases cited in note 2.

In *City of Rochester* v. *Town of Rush*, 80 N. Y. 302, the court of appeals uses this language: "I am unable to perceive that in any sense the water-works can be regarded as private property of the city as distinguished from property held by it for public use. These considerations lead to the opinion that the property was not taxable, and that the proceedings upon the part of the assessors of the town of Rush in regard thereto, cannot be sustained."

In *Town of West Hartford* v. *Board, etc.*, 44 Conn. 360, the court expressed itself thus: "The introduction of a supply of water for the preservation of the health of its inhabitants by the city of Hartford is unquestionably now to be accepted as an undertaking for the public good in the judicial sense of that term; not indeed as a discharge of one of the few governmental duties imposed upon it, but as ranking next in order. For this purpose, the legislature invested the city with a portion of its sovereignty, and authorized it to enter within the territorial limits of West Hartford and condemn by process of law certain lands therein for the purpose of storing water for its own inhabitants. It authorized the assessment of a tax upon property within the city of Hartford for money wherewith to pay for this land, because the taking and holding was for the public good." To the same effect are the following cases: *Smith* v. *Nashville*, 88 Tenn. 464, 12 S. W. 924, 7 L. R. A. 469; *Meriwether* v. *Garrett*, 102 U. S. 473, 26 L. Ed. 197; *New Orleans* v. *Morris*, 105 U. S. 600, 26 L. Ed. 1184.

In our opinion, water-works and electric light plants held, owned, and maintained by cities, as were those described in the complaint, must be regarded as property held in trust for a public use. Nor do we think they lose that character by reason of the fact that water and light are supplied to the inhabitants for domestic purposes, and that rentals and charges are paid for the same. As far as the

State, *ex rel.*, *v.* Indianapolis Union R. Co.

allegations of the complaint were material, they were sustained by the proof.

It follows from what we have said that the demurrer to the complaint was properly overruled, and the motion for a new trial denied.

We find no error.   Judgment affirmed.